[No. 53549-3.   En Banc.   July 27, 1989.]

ARTHUR HOFFER, ET AL, *Appellants,* v. THE STATE
OF WASHINGTON, ET AL, *Respondents.*

*McKay & Gaitan,* by *Michael D. McKay, James E. Niemer, Leslie J. Savina,* and *Linda E. Blohm; Berger & Steingut,* by *Charles S. Webb III, Stanley Steingut, Theodore S. Steingut,* and *Lawrence A. Mandelker (Douglass A. North, Hennings, Maltman, Weber & Reed, Carol Porell Cocheres, Eckert, Seamans, Cherin & Mellott,* and *Cornelius J. Peck,* of counsel), for appellants.

*Kenneth O. Eikenberry, Attorney General, James K. Pharris* and *Maureen Hart, Senior Assistants,* and *Robert J. Fallis, Assistant,* for respondents.

*G. Geoffrey Gibbs* on behalf of Washington Society of Certified Public Accountants, amicus curiae for respondents.

DURHAM, J.—Holders of bonds issued by the Washington Public Power Supply System (Supply System) sued the State of Washington and a handful of elected officials to recover damages suffered when the Supply System defaulted on its bond obligations. The trial court dismissed each of the claims set forth in the bondholders' complaint under CR 12(b)(6). On appeal, we reversed the dismissal as to eight of the nine claims before us. *Hoffer v. State,* 110 Wn.2d 415, 755 P.2d 781 (1988). We then granted reconsideration of two claims—one alleging negligent misrepresentation and the other alleging violations of The Securities Act of Washington (WSSA), RCW 21.20. Having reconsidered these issues, we decline to reverse our original holding.

Our reconsideration of the securities issue was triggered by a Supreme Court opinion filed after *Hoffer.* In *Pinter v. Dahl,* 486 U.S. 622, 100 L. Ed. 2d 658, 108 S. Ct. 2063 (1988), the Court used a different test in construing a federal securities statute than the one we used in *Hoffer* in construing our similarly worded state statute.[1] *Pinter* requires a strict privity analysis of the term "seller" under section 12(1) of the Securities Act of 1933, 15 U.S.C. 77*l*(1), while *Hoffer* applies a less restrictive standard to RCW 21.20.430(1), construing "seller" to include not only those in strict privity with a buyer but also those who were a "substantial contributive factor" in causing the sale to take place. *Hoffer,* at 429–30.

The "substantial contributive factor" test applied in *Hoffer* was first adopted by this court in *Haberman v.*

---

[1]Section 12(1) provides that "[a]ny person who offers or sells a security in violation of section 77e of this title . . . shall be liable to the person purchasing such security from him". 15 U.S.C. 77*l*(1). Washington's statute provides that "[a]ny person, who offers or sells a security in violation of any provisions of RCW 21.20-.010 or 21.20.140 through 21.20.230, is liable to the person buying the security from him or her". RCW 21.20.430(1).

*WPPSS,* 109 Wn.2d 107, 744 P.2d 1032, 750 P.2d 254 (1987). In *Haberman,* we specifically rejected a strict privity test, finding more persuasive the substantial factor test. *Haberman,* at 124–33. The State now asks this court to follow the lead of the Supreme Court in rejecting that test. This we decline to do. It is well settled that the Supreme Court's construction of a similarly worded federal statute, although often persuasive, "is not controlling in our interpretation of a state statute." *State v. Gore,* 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984); *Weeks v. Chief of the Washington State Patrol,* 96 Wn.2d 893, 897, 639 P.2d 732 (1982); *State v. Eaves,* 39 Wn. App. 16, 20, 691 P.2d 245 (1984). This principle holds true in the area of securities law. *Haberman,* at 130 ("federal law does not preempt or control state securities acts").

Initially, we note that *Pinter* is distinguishable from the present case. The relevant section of our state statute was patterned after section 12(2) of the Securities Act of 1933,[2] not section 12(1). *See Haberman,* at 125. Although *Pinter* adopted the strict privity test in interpreting section 12(1), the Court expressly declined to hold that the same test would be applied to section 12(2). *Pinter,* 108 S. Ct. at 2076 n.20. We cannot predict whether the Supreme Court will extend its test to apply to section 12(2) as well. It would be imprudent to upset settled law in this state solely on speculation that the Supreme Court might reach a different result under the analogous federal provision.

---

[2]Section 12(2) reads in part as follows:

"Any person who . . . offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him . . ." 15 U.S.C. § 77*l*(2).

In addition, we find the "substantial contributive factor" test persuasive in the context of WSSA even if the Supreme Court does not in the federal setting. First, it is important to note that the WSSA has a different purpose than the federal statute, in that it endeavors to protect investors, not just the integrity of the marketplace. Accordingly, our statute is more broadly construed. *Haberman,* at 125–26.

Second, as the *Haberman* dissent pointed out, differences in the structure of the two statutes imply that the federal standard not be applied to the state statute. *Haberman,* at 182. For example, the federal statute creates separate liability for issuers of securities, but the state statute does not. *Haberman,* at 132. Thus, use of a strict privity test would leave a gap in the coverage of the state statute that does not exist in the federal.

Finally, adoption of a strict privity test would insulate issuers in a firm commitment underwriting from liability under WSSA even though these issuers create the official reports and annual statements that are so critical in informing investors. *Haberman,* at 132. Such a result could not have been intended by our Legislature. Therefore, we retain the "substantial contributive factor" test in interpreting the term "seller" in RCW 21.20.430(1).

We also decline to reverse our holding on the negligent misrepresentation issue. We originally held that the bondholders had stated a claim upon which relief could be granted under section 552 of the Restatement (Second) of Torts (1977). *Hoffer,* at 427–29. One of the requirements for recovery under that section is that the loss be suffered by the "person or one of the *limited group* of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it". (Italics ours.) Restatement (Second) of Torts § 552(2)(a) (1977). The State argues that the information at issue here was intended to be transmitted to the general investing public, a group that it contends is not "limited". We need not decide whether the general investing public as a whole qualifies under this standard, however, because

certain subgroups of the bondholders might have been singled out to receive the letter. *See Haberman,* at 163–64. This being a CR 12(b)(6) case, and the facts not yet having been developed, we cannot say that the State has satisfied its burden of proving that no conceivable set of facts could exist under which at least some of the bondholders would be able to meet this standard.

In sum, our reconsideration of the negligent misrepresentation and WSSA claims has not altered our original conclusion. Eight of the nine claims survive the State's motion pursuant to CR 12(b)(6), and the case is remanded for further proceedings.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, and SMITH, JJ., concur.

PEARSON, J. (dissenting)—I dissent for the reasons given in my dissent in *Haberman v. WPPSS,* 109 Wn.2d 107, 179–90, 744 P.2d 1032, 750 P.2d 254 (1987). RCW 21.20-.430(1), by its plain language, requires privity of the seller and the person buying the security. My views are reinforced by *Pinter v. Dahl,* 486 U.S. 622, 100 L. Ed. 2d 658, 108 S. Ct. 2063 (1988). As the majority acknowledges, *Pinter* now requires a strict privity analysis of the term "seller" under section 12(1) of the Securities Act of 1933, 15 U.S.C. 77*l*(1).

The underpinnings of *Haberman* came from lower federal court decisions which are no longer authoritative in light of the *Pinter* ruling. It is an anomaly for the majority to adhere to a "substantial contributive factor" analysis which has now been discredited by the United States Supreme Court.

I also disagree that a negligent misrepresentation claim survives summary judgment. My reasons are contained in my dissent in *Haberman v. WPPSS, supra.*

ANDERSEN, J., concurs with PEARSON, J.