[No. 22244-9-I.   Division One.   January 8, 1990.]

LOUIS ROZNER, *Appellant,* v. THE CITY
OF BELLEVUE, *Respondent.*

Coleman, C.J., dissents by separate opinion.

*Michael Rosen, Kenneth Kanev,* and *Nancy Talner,* for appellant.

*Richard L. Andrews, City Attorney,* and *John R. Olson* and *David Kahn, Assistants,* for respondent.

Forrest, J.—Louis Rozner appeals from the trial court's affirmance of the hearing examiner's decision forfeiting Rozner's 1984 Ford van to the City of Bellevue. We reverse.

On October 3, 1986, a warrant was issued for seizure of Rozner's van. The order was based upon the affidavit of probable cause submitted by Detective Bronson, an officer with the Bellevue Police Department. In the affidavit, Detective Bronson stated that he began negotiations on August 18, 1986, to purchase for $28,000 a pound of cocaine through two persons identified as "Narvekar" and "Mack". An unidentified source was to supply the cocaine. Detective Bronson subsequently learned that: (1) the source lived on the top floor of a secured apartment building but was soon to move to a house; (2) the source owned a customized van with a refrigerator; and (3) the van's front end had been damaged in an accident.

On September 3, 1986, Detective Bronson and another detective went with Narvekar and Mack to a residential area in Seattle. After either Narvekar or Mack had "gotten out on foot to purchase the cocaine", they sold one–eighth ounce to the detectives and the parties then left the area. After about an hour, the detectives returned to this area and noticed a Ford van with front end damage parked in front of the apartment building where they had earlier parked. The registered owner, Lica (Louis) Rozner, lived on the top floor of the apartment building.

Detective Bronson learned from Narvekar and Mack that their source was moving from his apartment to a house. Bronson visited the apartment on September 10, 1986. He learned from the occupant that the previous occupant was staying in a hotel until he could locate a house. Narvekar and Mack later told Bronson that their source had moved from his apartment to a hotel until he could find a house. Bronson learned the telephone number from Rozner's previous apartment had been reconnected to a nearby house. Rozner's van was seen there on numerous occasions.

Bronson arranged with Narvekar and Mack to purchase a pound of cocaine on September 23, 1986. Electronic paging devices were used by the parties. Rozner's house was under surveillance during the course of the attempted transaction. Narvekar eventually paged to report the source had just left to get the cocaine. This was 7 minutes after Rozner was observed leaving his house in his van. He returned in another 6 minutes. After a delay, Narvekar paged to report that he had to meet the source. Simultaneously, the surveillance unit reported that Rozner left his house in the van. He returned in 40 minutes. Narvekar later reported that the source was afraid to complete the deal that day.

On September 26, 1986, Bronson resumed discussion with Narvekar about buying a pound of cocaine. During the conversation, Narvekar mentioned, "Louie always has good stuff that is 110 percent." Bronson reported that Narvekar obviously did not intend to reveal the name of his source. A

deal was arranged for later that day. After meeting Narvekar and Mack, Narvekar mentioned that his source had been in another accident with his van. While Bronson and another detective waited, Narvekar crossed the street to a tavern to meet with the source. Narvekar returned and reported he had spoken with his source. The parties, however, failed to agree on terms of the sale. Narvekar and Mack were arrested. Rozner was arrested in the tavern across the street. He had not driven his damaged van to the site of the transaction.

Based on Detective Bronson's affidavit, the trial court issued an ex parte warrant for seizure of Rozner's van on October 3, 1986. The van was seized on December 12, 1986. Rozner filed a written claim of ownership and, after the City of Bellevue moved for forfeiture of the van, a hearing was held on the forfeiture motion. The hearing examiner ordered forfeiture of Rozner's van. The Superior Court affirmed. On appeal, Rozner asserts that there was insufficient probable cause to seize his van, and that the hearing examiner committed an error of law in using a "probable cause" standard to justify forfeiture. He also claims there was insufficient evidence to support forfeiture under RCW 69.50.505(a)(4).

## PROBABLE CAUSE

■ Rozner contends that the warrant authorizing seizure of his van was improperly issued because probable cause was lacking. Probable cause for a search warrant or seizure is established by an affidavit or testimony stating facts sufficient for a reasonable person to conclude the defendant probably was involved in criminal activity.[1] The trial court is entitled to great deference in its probable cause determination, with doubts resolved in favor of

---

[1] *State v. Huft,* 106 Wn.2d 206, 720 P.2d 838 (1986); *State v. Cord,* 103 Wn.2d 361, 693 P.2d 81 (1985).

issuance of the warrant.[2] Circumstantial evidence may satisfy the government's burden.[3]

Here, Detective Bronson recited facts stated by Narvekar and Mack which resulted in his conclusion that Rozner was their drug source. He also described Rozner's movements in his van on September 23, 1986. Bronson further mentioned Rozner's arrest on September 26, 1986, in a bar where Narvekar allegedly met his source while attempting to arrange the drug transaction. We hold sufficient probable cause existed to justify issuance of the warrant authorizing seizure.

### BURDEN OF PROOF FOR FORFEITURE

Rozner claims the hearing examiner committed an error of law in using a "probable cause" standard to justify permanent forfeiture of his van.

Former RCW 69.50.505(e) reads in part: "[T]he burden of producing evidence shall be upon the person claiming to be the lawful owner or the person claiming to have the lawful right to possession of items specified in subsection (a)(4) or (a)(7) of this section."[4] The court in *Irwin v.*

---

[2]*State v. Mak*, 105 Wn.2d 692, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

[3]*United States v. One 1976 Ford F-150 Pick-Up*, 769 F.2d 525, 526 (8th Cir. 1985).

[4]Former RCW 69.50.505(a), as referenced in the quotation above, reads:
"The following are subject to seizure and forfeiture:
". . . .
"(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale of [illegal controlled substances and related items] . . .
". . . .
"(7) All moneys, negotiable instruments, securities, or other intangible property of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this chapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this chapter: *Provided*, That no property may be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission which that owner establishes was committed or omitted without the owner's knowledge or consent."

*Mount*[5] interpreted this language to place upon the claimant the initial burden to show a lawful interest in the property seized, but declined to decide the burden of proof at subsequent stages of forfeiture proceedings. Hence, this court must determine how the burden of proof is to be allocated in drug forfeiture proceedings.

The City advocates adopting the federal approach. Generally, in federal forfeiture cases, once the government meets the probable cause threshold, the burden shifts to the claimant to prove, by a preponderance of the evidence, that the property was not used or intended to be used unlawfully.[6] This differs, of course, from most civil and criminal proceedings where the burden of proof rests upon the plaintiff or accuser.[7] Shifting the burden to the claimant, however, has been held to be constitutional.[8] Forfeiture is a harsh remedy which warrants caution and clear evidence before property is ordered forfeited.[9]

A finding of probable cause is generally required in ex parte proceedings as the threshold showing to justify government action to arrest, search or seize. Probable cause

---

[5]47 Wn. App. 749, 753, 737 P.2d 277, *review denied,* 108 Wn.2d 1031 (1987).

[6]*United States v. One 1970 Mercedes Benz, 450 SEL,* 708 F.2d 444, 447 (9th Cir. 1983), *cert. denied,* 464 U.S. 1071 (1984); *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1427 (11th Cir. 1983). The probable cause standard used to support forfeiture in federal cases is the same as the standard employed to test searches and seizures. *United States v. One 1975 Mercedes 280S,* 590 F.2d 196, 199 (6th Cir. 1978).

[7]*United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106, 1107 (9th Cir. 1976).

[8]*United States v. $250,000,* 808 F.2d 895, 900 (1st Cir. 1987); *United States v. $2,500,* 689 F.2d 10, 12 (2d Cir. 1982); *United States v. One 1970 Pontiac GTO, 2-Door Hardtop,* 529 F.2d 65 (9th Cir. 1976).

[9]*See United States v. One (1) 1975 Thunderbird,* 576 F.2d 834, 836 (10th Cir. 1978).

determinations are frequently made under severe time constraints and with only partial information.[10] A finding of probable cause means a reasonable basis to act has been demonstrated. Probable cause determinations are not intended to resolve factual disputes between parties. Such a finding is not appropriate to adequately and finally adjudicate a party's property rights. It is no less objectionable that the forfeiture results from shifting the burden of proof to the claimant challenging forfeiture after the government has merely established probable cause.

■ The initial seizure under RCW 69.50.505 requires a showing of probable cause.[11] As a matter of statutory construction, we hold that former RCW 69.50.505 (under which this case was decided) then placed the burden on the governmental agency to establish by a preponderance of the evidence that the property sought to be forfeited was used, or intended to be used, to facilitate a drug sale. This interpretation is supported by former RCW 69.50.505(a)(4)(ii)[12] and RCW 69.50.506(a)[13] in which the Legislature explicitly placed the burden of proving certain exemptions from

[10]As the court in *State v. Patterson*, 83 Wn.2d 49, 57, 515 P.2d 496 (1973), so aptly described: "Warrants may be and frequently are sought by police officers under conditions of the utmost urgency with little time or opportunity for consultation with counsel. Supporting documents may have been hurriedly drafted by laymen while in the crucial phase of an investigation under the urgent necessity of obtaining the evidence before it is removed or destroyed."

[11]*Irwin v. Mount, supra* at 753.

[12]"No conveyance is subject to forfeiture under this section by reason of any act or omission *established by the owner thereof* to have been committed or omitted without his knowledge or consent[.]" (Italics ours.)

[13]"It is not necessary for the state to negate any exemption or exception in this chapter in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this chapter. *The burden of proof of any exemption or exception is upon the person claiming it.*" (Italics ours.)

forfeiture upon the claimant.[14] If the Legislature intended to place upon the claimant the burden of disproving illegal use of property, it would be redundant to explicitly place the burden on the claimant to establish an exemption. Allocation of the burden to the claimant as to exemptions, yet not as to illegal use, raises an inference that the claimant does not carry the burden to disprove the alleged illegal use.

■ Forfeiture statutes are quasi–criminal in nature.[15] They should, therefore, be construed against the government.[16] Moreover, to the extent such statutes are civil in nature, the proponent of forfeiture should be required to prove its claim by a preponderance of the evidence in order to prevail.

There are only three possible results at the conclusion of a forfeiture hearing: (1) the government proves by a preponderance that the property was used, or intended to be used, to facilitate a drug sale; (2) the claimant proves by a preponderance that the property was not used, nor intended to be used, to facilitate a drug sale; and (3) the evidence is exactly evenly balanced.

In the first case, the government would prevail under either the federal approach or under our interpretation of the standard required by former RCW 69.50.505. In the second case, the claimant would prevail under either approach. It is only in the third case that the choice of standard would yield different results. Under federal cases, as the City urges, the governmental agency would be entitled to forfeiture having previously established probable

---

[14]*Cf. State v. Michel,* 55 Wn. App. 841, 781 P.2d 496 (1989) (claimant had the burden of proving lack of knowledge, the lawful right to possession, or any exemption or exception to the State's prima facie case for forfeiture).

[15]*Deeter v. Smith,* 106 Wn.2d 376, 378, 721 P.2d 519 (1986); *Kahler v. Kernes,* 42 Wn. App. 303, 308, 711 P.2d 1043 (1985).

[16]*Kahler,* at 308; *State v. Gore,* 101 Wn.2d 481, 485–86, 681 P.2d 227, 39 A.L.R.4th 975 (1984); *Jordin v. Vauthiers,* 89 Wn.2d 725, 575 P.2d 709 (1978).

cause if the claimant could not prove by a preponderance that the property was not used, or intended to be used, unlawfully.

The Washington State Legislature did not allocate in former RCW 69.50.505 the burden of proof in forfeiture hearings. The City asserts that the recent amendment of RCW 69.50.505(e) resolves the dispute over the burden of proof under the former statute as to personal property. RCW 69.50.505(e) now reads in pertinent part:

> In cases involving personal property, the burden of producing evidence shall be upon the person claiming to be the lawful owner or the person claiming to have the lawful right to possession of the property. In cases involving real property, the burden of producing evidence shall be upon the law enforcement agency. The burden of proof that the seized real property is subject to forfeiture shall be upon the law enforcement agency.

(Underlining indicates language amended by the Legislature to this portion of the section.) Laws of 1989, ch. 271, § 212, p. 1302.

Although the amended statute places the burden upon the law enforcement agency to prove that real property is subject to forfeiture, it still fails to designate the burden as to personal property. We can find no reasonable justification for creating a distinction between the burden imposed upon claimants challenging forfeiture of real property and those challenging forfeiture of personal property. We are not persuaded that the Legislature's failure in the amended statute to allocate the burden of proof in hearings on forfeited personal property reveals its intent under the former statute to place the burden upon claimants.

The federal drug forfeiture statute also fails to allocate the burden of proof.[17] Although federal cases have since resolved this issue, federal court construction of a

---

[17]See 21 U.S.C. § 881; *Kahler v. Kernes,* 42 Wn. App. 303, 307, 711 P.2d 1043 (1985).

similarly worded federal statute, although persuasive, does not control our interpretation of a state statute.[18]

Many states with forfeiture statutes substantially like ours have imposed a similar burden of proof.[19] Adopting this standard, which is guided by a large body of law, will give clarity to the conduct of forfeiture proceedings. These proceedings are conducted pursuant to the administrative procedure act. When the claimant offers no evidence, as here, application of a preponderance standard rather than one based on probable cause may make little practical difference. Uncontested facts sufficient to establish probable cause would usually support, although not necessarily compel, a finding by a preponderance that the property should be forfeited. However, the same standard should apply to forfeiture hearings regardless of whether or not the claimant introduces evidence.

We recognize that drug abuse is a serious national problem. Still, the government must establish guilt beyond a reasonable doubt before depriving an accused of his liberty. It is reasonable, as a matter of statutory construction, to require the government to prove by a preponderance that property was used, or intended to be used, to facilitate a drug sale before depriving a citizen of that property through civil forfeiture proceedings. We do not decide whether due process considerations require this result.

The dissent relies on the Governor's 1988 veto message to ESSB 6316 and the 1989 legislative response thereto in interpreting former RCW 69.50.505(e). This reliance is misplaced. The Governor's veto message and the dissent both assume that under former RCW 69.50.505(e) claimants had

---

[18]*Hoffer v. State*, 113 Wn.2d 148, 151, 776 P.2d 963 (1989); *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984).

[19]*See, e.g.,* Ark. Stat. Ann. § 5–64–505(e) (Supp. 1987); *One 1982 Datsun 280ZX v. Bentley*, 285 Ark. 121, 685 S.W.2d 498, 499 (1985); Idaho Code § 37–2744(d) (Supp. 1989); *In re Twenty–Seven Thousand Four Hundred Forty Dollars*, 164 Ill. App. 3d 44, 517 N.E.2d 704 (1987); Iowa Code § 809.11 (Supp. 1988); S.D. Codified Laws Ann. § 34–20B–80 (Supp. 1988); Tex. Rev. Civ. Stat. Ann. art. 4476–15, § 5.07(b) (Vernon Supp. 1988).

the burden of proving at forfeiture hearings that their seized personal property was not used, or intended to be used, illegally.[20] That is, however, the precise issue before this court.

Former RCW 69.50.505(e) did not clearly allocate the burden of proof to the claimant. In *Irwin v. Mount, supra,* the only case to consider the burden of proof language in RCW 69.50.505(e), the court concluded that the initial burden to show a lawful interest in the forfeited property is upon the claimant. The *Irwin* court, however, specifically declined to decide the burden of proof at subsequent stages of forfeiture proceedings. Hence, the assumption of the Governor's veto message reflecting the views of law enforcement and of the dissent is incorrect.

The language with which we are concerned has not been changed since its original enactment in 1981. Construing the language as originally enacted, we have concluded that the burden is on the government to justify forfeiture of the claimant's personal property. We do not find the legislative history relied upon by the dissent compelling. First, deriving the intent of the 1981 Legislature as to the claimant's burden from the 1989 Legislature's failure to change the language is strained at best. Second, the sequence of events is ambiguous. The 1988 Legislature intended to explicitly place the burden on the government as to forfeiture of both real and personal property. After the Governor's veto, the 1989 Legislature may well have decided to settle for placing the burden for justifying real property forfeitures on the government, with the hope of achieving the same result as to personal property by having the courts allocate the burden. This is precisely what the 1981 Legislature did when it enacted RCW 69.50.505(e). The 1989 Legislature's failure to change the relevant language does not establish that it accepted, desired or intended the Governor's law enforcement–inspired interpretation of the original language.

---

[20]Dissent, at 539; Laws of 1988, ch. 282, p. 1304.

PROPRIETY OF THE FORFEITURE

■ The hearing examiner applied a probable cause standard to essentially undisputed facts. The choice of standard is an issue of law. This court reviews such decisions de novo and may substitute its judgment for that of the administrative agency.[21] The examiner erred in applying a probable cause standard to these proceedings.

The undisputed facts as to the attempted drug sale at issue are derived solely from Detective Bronson's affidavit and testimony. The same information was before the Superior Court which issued the seizure order, the hearing examiner and this court. Hence, we apply the law to the unchallenged facts.[22]

Former RCW 69.50.505 states, in relevant part:

(a) The following are subject to seizure and forfeiture:

. . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or intended for use, in any manner to facilitate the sale of [illegal controlled substances and related items] . . .

Although Detective Bronson's investigation began on August 18, 1986, the City asserts forfeiture of the van was justified because it carried Rozner to a meeting with Narvekar where it is claimed that negotiations over a drug deal were held. Hence, the van was allegedly used to "facilitate the sale of [illegal controlled substances]".[23] This meeting occurred between 7:25 and 8:05 p.m. on September 23, 1986.

Earlier that day, Narvekar reported that his source had gone to get the cocaine. Rozner's van was observed leaving his house at approximately the same time. It returned within 15 minutes. Shortly after, Narvekar paged to inform

---

[21] *Gibson v. Department of Empl. Sec.*, 52 Wn. App. 211, 758 P.2d 547 (1988); *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 687 P.2d 195 (1984); *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

[22] *Franklin County*, at 325; *Gibson*, at 216–17.

[23] Former RCW 69.50.505(a)(4).

Detective Bronson that he was leaving to meet his source and would report back. He failed to do so. Narvekar never reported the contents of the conversation at this alleged meeting. When Bronson later went to Narvekar's home at about 10 p.m., he was told, "The deal is off." There is no information of what took place at the September 23 meeting. We have no evidence that any arrangements were made as to time, place or amount of any sale. The only reference to the possible terms of the transaction is found in the opening sentence of Detective Bronson's affidavit: "Since August 18, 1986, I have been negotiating with two subjects to purchase a pound of cocaine. The cocaine was to be obtained from a third person for $28,000." Nothing ties this background information to the critical meeting. These events do not establish that they made a deal at their meeting. If anything, it suggests the contrary.

The events of September 26, 1986, do not help establish that the parties had, in fact, made a deal at the crucial meeting 3 days earlier. On arrest, Rozner had no drugs, despite claims by Narvekar that his source was across the street and ready to complete the sale. The van was not involved.

No sale ever took place. Nor is there any showing of any deal or negotiations at the critical meeting involving the van. Nothing but innocent details ever corroborated Narvekar's assertions that Rozner was going to sell him drugs. These facts are insufficient as a matter of law to establish by a preponderance of the evidence that the van was subject to forfeiture under RCW 69.50.505.

In view of our disposition of the case, we need not decide the other issues raised by Rozner.

Reversed.

WINSOR, J., concurs.

COLEMAN, C.J. (dissenting)—I am persuaded by the City's argument that the recent amendment to RCW 69.50-.505(e) settles any dispute over who, under the former statute, carried the burden of proof in establishing whether personal property subject to forfeiture was used to facilitate the sale of illegal drugs. Contrary to the position taken by the majority, I believe that that burden rests upon the claimant. The validity of this conclusion is evidenced by the statute's recent legislative history.

In 1988, both houses of the Legislature passed ESSB 6316, which would have amended RCW 69.50.505. At that time, RCW 69.50.505 did not address seizure and forfeiture of real property—rather it concerned only personal property. The primary objective of the amending legislation was to provide law enforcement with the additional necessary tools to seize real property acquired and used in furtherance of the illegal drug trade. In addition, the bill also sought to shift the burden of producing evidence in a hearing to reclaim seized property from the claimant to the law enforcement agency that seized the property.

The Governor vetoed all material sections of the bill. In his veto message, the Governor advised the Senate that among other changes, the wholesale shift in the "burden of proof", for both the existing personal property provisions and the new real property provisions, would retard law enforcement's efforts to seize property related to illegal drug transactions. The Governor added:

> I would encourage the Legislature and the law enforcement community to work together in the next session to again review this issue and attempt to pass a law which allows law enforcement to continue under existing law for the "personal property" forfeitures while adding new separate provisions for "real property" forfeitures.

Senate Journal, 50th Legislature (1988), at 1682.

This is, at least in result, precisely what the 1989 Legislature did. The amended statute retained the existing language which placed the burden of producing evidence upon the claimant and prefaced it by stating that that burden

will apply in cases involving personal property. The Legislature then added new language which created a separate standard for real property specifically placing the burden of proof upon the law enforcement agency. The statute in pertinent part provides:

> In cases involving personal property, the burden of producing evidence shall be upon the person claiming to be the lawful owner or the person claiming to have the lawful right to possession of the property. In cases involving real property, *the burden of producing evidence shall be upon the law enforcement agency. The burden of proof that the seized real property is subject to forfeiture shall be upon the law enforcement agency.*

(Italics mine.) Laws of 1989, ch. 271, § 212, p. 1302.

It is clear from the Governor's veto message that he understood the existing statute placed the burden of proof upon the claimant and that he strongly disapproved of any change in the status quo. It is equally apparent from the text of the 1989 revised bill that the Legislature acted upon the Governor's recommendation. The amended statute reflects the Legislature's intent to distinguish between the burden allocated in personal and real property cases. If the Legislature intended to place the burden of proof upon law enforcement in personal property cases, the 1989 amendment offered it its chance to do so. In fact it sought such a change in 1988 and the bill was vetoed. By specifically adding language that placed the burden of proof upon law enforcement in real property cases only, logic dictates that the Legislature intended the burden of proof to remain with the claimant in personal property cases. Had it intended otherwise, it would have used the same burden of proof language in that portion of the statute dealing with personal property. Having specified that the burden of proof is upon the law enforcement agency in real property cases, its very silence on the issue of the burden of proof in personal property cases carries the necessary implication that it believed and intended that the burden of proof be on the claimant. Its silence is understandable because it

would have no reason to believe that any further statement was necessary.

The majority would have us believe that the absence of express language allocating the burden of proof in hearings on forfeited personal property manifests a legislative omission. It theorizes the Legislature simply forgot to address the issue; however, this position is untenable in light of the proposed changes in ESSB 6316, the Governor's veto message, and the Legislature's subsequent action. The legislative history is unambiguous. The Legislature tried to change the law and, when the Governor did not approve, it adopted his position. This recent legislative history explains why the Legislature added the burden of proof provision of real property but was silent with respect to personal property.

The changes inserted in the present statute necessarily raise the inference that the standard required by the former RCW 69.50.505 placed the burden upon the claimant to disprove illegal use in personal property cases. A careful review of the legislative history makes this inference a verity. Adopting the standard as suggested by the majority will not only fail to bring clarity to the conduct of drug forfeiture proceedings, but will contradict the Legislature's obvious intent.[24]

For the reasons indicated, I must respectfully dissent.

Review granted at 114 Wn.2d 1019 (1990).

---

[24]The majority's attempt to answer the dissent is not persuasive. If the Governor and law enforcement, the very entity charged with enforcing the forfeiture statute, were confused as to the Legislature's intent, surely the Legislature would have acted to clarify the situation and correct any misapprehension. The actions of the Legislature indicate that the Governor's interpretation of its intent was accurate.