123 P.3d 508 (2005)
130 Wash.App. 436
Clark E. KINNEY and Barbara E. Kinney, individually and the marital community, Appellants,
v.
Kenneth B. COOK, a single man, Respondent.
No. 22704-9-III.
Court of Appeals of Washington, Division 3, Panel Two.
November 22, 2005.
*509 Maris Baltins, Tamara W. Murock, Baltins & Murock, P.S., Spokane, WA, for Appellants.
*510 Lawrence R. Small, Erin A. Jacobson, Paine, Hamblen, Coffin, Brooks & Miller LLP, John D. Munding, Attorney at Law, Spokane, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 A motion to dismiss under CR 12(b)(6) is granted only if there is no set of facts pleaded, known, or hypothetical that could justify recovery. Clark and Barbara Kinney appeal an order granting Kenneth Cook's CR 12(b)(6) motion to dismiss their suit under the Washington State Securities Act (WSSA), chapter 21.20 RCW. We cannot conclude that Mr. Cook met his burden to sustain a CR 12(b)(6) motion. We also hold that the Kinneys filed their complaint within the statutory limitations period. Accordingly, we reverse and remand.

FACTS
¶ 2 In December 1993, the Kinneys decided to form Spokane Freightliner, Inc. (the corporation) with Mr. Cook to sell and service new and used heavy duty trucks, trailers, parts, and accessories. The Kinneys and Mr. Cook agreed to each contribute $225,000 in exchange for 50 percent of the corporation's shares. The Kinneys borrowed money for their shares from Mr. Cook. They signed a promissory note on December 31, 1993, naming Mr. Cook as a payee. The note was secured by the Kinneys' signatures to a stock pledge agreement in which they pledged their shares to Mr. Cook as collateral. Upon receipt of the money, the Kinneys contributed it to the corporation in exchange for 50,000 shares of common stock in the corporation.
¶ 3 On February 26, 1997, the parties decided to end their relationship and entered into a memorandum of understanding in which Mr. Cook purchased the Kinneys' shares and the note and pledge agreement was cancelled.
¶ 4 On September 15, 1998, the Kinneys brought a lawsuit against Mr. Cook and the corporation, alleging that Mr. Cook's purchase of the shares violated the WSSA. They asserted that Mr. Cook acquired their shares in February 1997 by misrepresenting the financial condition of the corporation and the fair market value of the stock.
¶ 5 Meanwhile, in January 2000  when Mr. Cook was in sole control of the corporation during the pendency of the Kinneys' lawsuit  Mr. Cook entered into an agreement in which the corporation agreed to act as guarantor of a $4.5 million loan made by Mercedes Benz Credit Corporation to Select Credit & Leasing, L.L.C., a limited liability company owned solely by Mr. Cook.
¶ 6 At trial, a jury found that Mr. Cook violated the WSSA. On July 11, 2000, a judgment was entered ordering, among other things, the rescission of Mr. Cook's purchase of the Kinneys' shares, reinstatement of the 1993 promissory note and pledge agreement, and reinstatement of the Kinneys as guarantors of the corporation's debts.
¶ 7 On July 12, one day after entry of the judgment, Mr. Cook delivered a notice of default on the note to the Kinneys demanding full payment in accordance with the note and pledge agreement. The Kinneys paid the amount due, $266,534.06, to Mr. Cook on July 26. The Kinneys received the stock two days later.
¶ 8 At the board of directors meeting on August 4, 2000, Mr. Cook demanded that the Kinneys sign personal guaranties agreeing to act as co-guarantors on loans made to the corporation. They complied. The Kinneys first learned that the corporation had guaranteed the $4.5 million debt of Mr. Cook's other business on August 15, 2001, when they received bankruptcy papers that Mr. Cook had filed on behalf of the corporation.
¶ 9 In response, the Kinneys filed the present litigation on April 30, 2003, in which they asserted:
Without knowledge of the $4,500,000 loan guarantee made by Cook, on July 26, 2000, plaintiffs repurchased their 50% interest in the Corporation by paying $266,534.06 to defendant Cook in satisfaction of the Promissory Note.
... In return, on or about July 28, 2000, plaintiffs received a stock certificate for 50,000 shares in the Corporation.
Clerk's Papers at 6.
¶ 10 The Kinneys alleged that these acts violated the WSSA and asked for the return *511 of the money they paid for their shares ($266,534.06) together with rescission of their personal guaranties for the corporation's debts and attorney fees. Mr. Cook moved to dismiss under CR 12(b)(6). He essentially argued that because the note was a personal loan from him to the Kinneys it did not fall under the WSSA. The trial court granted Mr. Cook's CR 12(b)(6) motion, concluding that the payment of the promissory note did not constitute a sale of securities. The Kinneys appeal. Mr. Cook's motion on the merits to affirm was denied.

DISCUSSION

a. Motion to dismiss
¶ 11 A trial court's ruling on a motion to dismiss under CR 12(b)(6) involves a question of law that we review de novo. Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994). Courts should dismiss under this rule only when it appears beyond a reasonable doubt that no facts justifying recovery exist. Id. Therefore, "a complaint survives a CR 12(b)(6) motion if any set of facts could exist that would justify recovery." Hoffer v. State, 110 Wash.2d 415, 420, 755 P.2d 781 (1988), aff'd on reh'g, 113 Wash.2d 148, 776 P.2d 963 (1989). A court may use hypothetical facts not part of the record in arriving at its determination. Id. "CR 12(b)(6) motions should be granted `sparingly and with care' and `only in the unusual case in which [a] plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Cutler, 124 Wash.2d at 755, 881 P.2d 216 (quoting Hoffer, 110 Wash.2d at 420, 755 P.2d 781). Courts presume the truth of allegations in the complaint for the purpose of the motion. Id.
¶ 12 Under the WSSA:
It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
(1) To employ any device, scheme, or artifice to defraud;
(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
RCW 21.20.010.
¶ 13 The WSSA "`is patterned after and restates in substantial part the language of the federal Securities Exchange Act of 1934.'" Guarino v. Interactive Objects, Inc., 122 Wash.App. 95, 110, 86 P.3d 1175 (2004) (quoting Clausing v. DeHart, 83 Wash.2d 70, 72, 515 P.2d 982 (1973)), review denied, 153 Wash.2d 1024, 110 P.3d 756 (2005). It is modeled after the Uniform Securities Act of 1956, which has been enacted in some form by the majority of states. Cellular Eng'g, Ltd. v. O'Neill, 118 Wash.2d 16, 23-24, 820 P.2d 941 (1991) (citing Haberman v. Wash. Pub. Power Supply Sys., 109 Wash.2d 107, 125, 744 P.2d 1032, 750 P.2d 254 (1987); Unif. Securities Act, 7B U.L.A. 509 (1985)).
¶ 14 The legislature directs us to construe the WSSA "to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation." RCW 21.20.900. However, the Washington Supreme Court has recognized that since the purpose of the federal statute is to protect investors and the integrity of the marketplace while the WSSA's purpose is limited to investor protection, the WSSA would be more broadly construed than the federal law. Hoffer v. State, 113 Wash.2d 148, 152, 776 P.2d 963 (1989) (citing Haberman, 109 Wash.2d at 125-26, 744 P.2d 1032). Therefore, we now recognize the remedial purpose of the WSSA and liberally construe it to protect investors from the speculative or fraudulent schemes of promoters. Cellular Eng'g, 118 Wash.2d at 23, 820 P.2d 941; Stewart v. Estate of Steiner, 122 Wash.App. 258, 264, 93 P.3d 919 (2004), review denied, 153 Wash.2d 1022, 108 P.3d 1229 (2005).
¶ 15 Mr. Cook argues that because the transaction here did not involve a security, the WSSA was not implicated and the Kinneys' complaint should be dismissed. He *512 correctly points out that in order for the transaction to involve a security, it must involve one of the statutory definitions. Under the current WSSA, a "security" is broadly defined to include:
[A]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; investment of money or other consideration in the risk capital of a venture with the expectation of some valuable benefit to the investor where the investor does not receive the right to exercise practical and actual control over the managerial decisions of the venture; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in an oil, gas, or mineral lease or in payments out of production under a lease, right, or royalty; charitable gift annuity; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities, including any interest therein or based on the value thereof; or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any security under this subsection. This subsection applies whether or not the security is evidenced by a written document.
RCW 21.20.005(12)(a).
¶ 16 When we define "security" under the statutory scheme, our approach "`embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" Cellular Eng'g, 118 Wash.2d at 24, 820 P.2d 941 (quoting Sec. & Exch. Comm'n v. W.J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)). Similarly, when determining whether a transaction constitutes a security, "`form should be disregarded for substance and the emphasis should be on economic reality.'" Id. at 24-25, 820 P.2d 941 (quoting Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)). This is consistent with what lawmakers had in mind when the securities laws were enacted, which was "`to regulate investments, in whatever form they are made and by whatever name they are called.'" Id. at 25, 820 P.2d 941 (emphasis omitted) (quoting Reves v. Ernst & Young, 494 U.S. 56, 61, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990)).
¶ 17 Mr. Cook also asserts that the motion to dismiss is appropriate because a sale did not occur. But the definition and interpretation of sale is expansive. The WSSA defines "sale" as
every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value. "Offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value.
Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing is considered to constitute part of the subject of the purchase and to have been offered and sold for value. A purported gift of assessable stock is considered to involve an offer and sale. Every sale or offer of a warrant or right to purchase or subscribe to another security of the same or another issuer, as well as every sale or offer of a security which gives the holder a present or future right or privilege to convert into another security of the same or another issuer, is considered to include an offer of the other security.
RCW 21.20.005(10).
¶ 18 The federal courts view the sale requirement in the context of the circumstances of the case before it because "`the anti-fraud goals of the Rule should not be frustrated by the presence of "novel or atypical transactions."'" In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 49 F.3d 541, 544 (9th Cir.1995) (quoting Madison Consultants v. Fed. Deposit Ins. Corp., 710 F.2d 57, 61 (2d Cir.1983) (quoting Crane *513 Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 798 (2d Cir.1969), rev'd in part, 490 F.2d 332 (2d Cir.1973))). The terms "purchase" and "sale" are not limited to their common law meanings. Northland Capital Corp. v. Silver, 236 U.S.App. D.C. 390, 735 F.2d 1421, 1427 (1984). For instance, federal courts have found that a sale has occurred when the parties have committed to each other, Griggs v. Pace American Group, Inc., 170 F.3d 877 (9th Cir.1999), or when there has been a meeting of the minds, Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 891 (2d Cir.1972). As stated by one court:
A bedrock requirement for the formation of any contract or bargain between unrelated parties, including those constituting a purchase or sale, is that the putative purchaser and seller come to a meeting of the minds or, in the phrase of the Restatement (Second) of Contracts, mutual assent on the essential terms of the transaction.
Northland Capital Corp., 735 F.2d at 1427. Moreover, even the term "contract" is given a broad and liberal interpretation. Mount Clemens Indus., Inc. v. Bell, 464 F.2d 339, 346 n. 12 (9th Cir.1972).
¶ 19 Finally, Mr. Cook argues that dismissal was proper because he was not a seller. "Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010... is liable to the person buying the security from him or her" and is entitled to a civil remedy. RCW 21.20.430(1).
¶ 20 After reviewing the WSSA statutory definitions and other authority, Mr. Cook concludes that because there was not a violation of the WSSA, dismissal is appropriate. However, Mr. Cook moved for dismissal under CR 12(b)(6). Therefore, we decide only whether the plaintiffs stated a valid cause of action. Given these broad definitions and our accommodating attitude toward securities fraud victims, we cannot say that the Kinneys have failed to state a claim upon which relief can be granted. Dismissal was inappropriate.

b. Statute of limitations
¶ 21 RCW 21.20.430(4)(b) relevantly provides, "No person may sue under this section ... more than three years after a violation of the provisions of RCW 21.20.010, either was discovered by such person or would have been discovered by him or her in the exercise of reasonable care." Under the statute "the 3-year period is tolled until the securities violation is discovered or should have been discovered." First Md. Leasecorp v. Rothstein, 72 Wash.App. 278, 287, 864 P.2d 17 (1993).
¶ 22 The Kinneys allege that Mr. Cook concealed a $4.5 million loan guaranty. The Kinneys did not learn of the guaranty until Mr. Cook filed his Disclosure Statement for Plan of Reorganization on August 15, 2001. The Kinneys filed their complaint for damages for securities violations on April 30, 2003, well within the three-year limitation period. There is no basis for holding otherwise.

CONCLUSION
¶ 23 The Kinneys' WSSA claim was improperly dismissed on a CR 12(b)(6) motion. Accordingly, Mr. Cook is not entitled to attorney fees for a frivolous suit as he requested. We reverse the order of dismissal and remand.
WE CONCUR: KATO, C.J., and BROWN, J.