[No. 42435.    En Banc.    November 1, 1973.]

H. P. CLAUSING *et al.* Respondents, v. RICHARD L. DEHART *et al., Appellants.*

*Davis, Wright, Todd, Riese & Jones,* by *Richard A. Derham* and *James E. Newton,* for appellants.

*Casey & Pruzan,* by *Martin Godsil,* for respondents.

UTTER, J.—Richard L. DeHart and his wife appeal from a judgment in favor of Dr. H. P. Clausing and Dr. Glenn E. Deer. This judgment forfeits the sale of all the stock in a nursing home and returns possession of the home to the sellers, Clausing and Deer.

The two basic issues presented on appeal are whether a counterclaim for rescission and damages based on The Securities Act of Washington (hereinafter Securities Act) should have been granted and whether the forfeiture of the contract of sale should have been granted.

Clausing and Deer contracted for the sale of stock in Nursing Home Building Corporation, identified hereinafter as Arden, for $700,000. The sellers received $80,000 down with subsequent payments due under the contract as installments. All required installment payments were submitted late and accepted through March 1971, but no subsequent payments have been made. After a trial to the court, the court found that the sellers were entitled to forfeit the

contract of sale and to retake possession of the nursing home upon discharge of the receiver and attorney's fees. The court allowed the purchasers a 90-day period of time within which to pay an amount of $316,000 to reinstate the contract and dismissed the purchasers' counterclaim based on the Securities Act.

Purchasers contend that the Securities Act provides them a remedy for misrepresentation. They argue that the act applies because the transfer, under an installment contract, of all the outstanding stock in Arden is a sale of securities under the act as a matter of law. This argument is premised upon RCW 21.20.010 which makes it

unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

. . .

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

. . .

The trial court found that the action of the purchasers was essentially one to forfeit a contract for sale of a nursing home and that the parties used the transfer of stock as a means to accomplish this. It concluded, therefore, that the Securities Act did not apply.

We do not agree. The Securities Act of Washington, RCW 21.20, is patterned after and restates in substantial part the language of the federal Securities Exchange Act of 1934. In *Matheson v. Armbrust*, 284 F.2d 670 (9th Cir. 1960), the court had occasion to rule on the breadth of application of the federal act. There, at page 674, it was contended that section 10(b) of the federal act was not applicable "with regard to 'face-to-face' negotiations outside the organized security market between private individuals as owner and purchaser in an isolated transaction for the sale of the entire capital stock of a corporation." However, the court held that section 10, the anti-fraud section of the act, does apply to "security transactions outside the

established securities-transfer business." *Matheson v. Armbrust, supra* at 674.

In *Fratt v. Robinson,* 203 F.2d 627, 631, 37 A.L.R.2d 636 (9th Cir. 1953), the court held that section 10 of the federal act applies to transactions in stock having no relationship to security exchanges or over-the-counter businesses, reasoning that section 10 "was enacted in order that those who desire to promote crooked deals would see little advantage in using devious methods to by-pass the security-dealing business houses under regulation."

We agree with the analysis of *Matheson* and *Fratt,* and by a parity of reasoning we hold that RCW 21.20.010 is applicable to "face-to-face" negotiations outside the security markets between private individuals for the sale of the capital stock of a corporation. This section, therefore, is applicable to this case. *Schine v. Schine,* 250 F. Supp. 822 (S.D.N.Y. 1966); *Bowman & Bourdon, Inc. v. Rohr,* 296 F. Supp. 847 (D. Mass. 1969); *Shermer v. Baker,* 2 Wn. App. 845, 472 P.2d 589 (1970); 17 C.F.R. 240.10b-5.[1]

There is still, however, a requirement that there be an untrue statement of a material fact. We have defined a material fact as " 'a fact to which a reasonable man would attach importance in determining his choice of action in the transaction in question.' " *Shermer v. Baker, supra* at 855. The trial court failed to find any such conduct. Its findings explicitly state that "[t]here is no evidence that plaintiffs or their agents made any false statements or misrepresentations to defendants DeHart or their agents." Finding of fact No. 3. As stated in finding of fact No. 18: "There has been no breach of warranties of the contract of sale by plaintiffs which would entitle defendants DeHart to rescission of the contract." These findings establish as a matter of fact that the breach of a warranty was not material.

Purchasers, however, urge the inclusion of the factual representation that the home was operated in accordance

---

[1] A transaction may be exempt as provided in RCW 21.20.320 from compliance with RCW 21.20.040-.300 inclusive, but still be subject to the provisions of RCW 21.20.010.

with all government rules and regulations as a warranty, makes any misstatement material, by the very language of the contract and must, therefore, be held to be strictly true. *Miller v. Commercial Union Assurance Co.*, 69 Wash. 529, 125 P. 782 (1912). The contract provided that:

6(1) *Representations and Warranties of Sellers.* Each of the Sellers, jointly and severally, covenant and warrant as follows:

. . .

(b) The statements of fact contained in this Purchase and Sale Agreement . . . relating, however, remotely, to this Purchase and Sale are true and correct, and Sellers acknowledge that Buyers relied upon each statement and were induced to purchase in reliance thereon.

. . .

(k) . . . All facilities and operations of the Company are constructed, operated and maintained in accordance with all applicable government rules and regulations, zoning, health, and licensing requirements.

Testimony at trial established that a requirement of the federal Social Security Administration relating to nursing homes (20 C.F.R. 405.1134(b)) required an emergency electrical service which was not installed at the time of the purchase and sale. The trial court recognized this deficiency and awarded the purchasers a credit of $6,500 as damages for its omission if the purchasers were able to reinstate the contract on payment of $316,000.

The record reveals that although the emergency equipment was not installed, the nursing home was certified by both the State of Washington and the federal government at the time of sale to appellants and that there was no state regulation relating to emergency electrical power systems. The state nursing inspector testified that neither state nor federal certification of the home had ever been jeopardized. A waiver could have been requested from the federal government concerning the emergency lighting system. The purchasers were experienced in the operation of nursing homes in the state of Washington and familiar with the

requirements of the government for certification. They physically inspected the home on several occasions prior to the sale, and whether or not adequate emergency power was available was apparent. The proposed expansion plans of the nursing home before purchase showed a proposed auxiliary electrical plant. The nursing home was operated at the time of sale with valid licenses from both federal and state governments. Taken together, the documentary and testimonial evidence admitted into the record, when viewed in a light most favorable to sellers, was adequate to support the trial court's findings regarding the impact of the breach on the purchasers.

While there is testimony which would support a contrary finding, there is also testimony from which the trial court could have concluded that there was no misrepresentation of a material fact. The trial court was not required to affirmatively state that it failed to find such a misrepresentation. Negative findings of fact are not required. *Miller v. Geranios*, 54 Wn.2d 917, 338 P.2d 763 (1959).

The question whether a warranty is made material by the language of the contract has arisen most frequently in insurance cases. There the tendency of most courts has been to hold any statements to be representations only, regardless of the terminology employed. This has been true where the insured agrees that a statement shall constitute the basis of the insuring agreement, even where he warrants that the statements are true, full, and complete, and offered to the insurer as a basis of contract. This result has also been reached where the insured declares and warrants his answers to be true, or where the policy declares all statements to be warranties, and provides for avoidance in the event of their falsity. 12 J. Appleman, *Insurance Law and Practice* § 7345 (1943).

We believe this is a reasonable rule to adopt. The provisions of the Securities Act are extremely broad-reaching. Where the equitable powers of the court are sought, as in rescission, this court will be more concerned with the ac-

tual impact of any statements or omissions on the parties than with formal recitals of their effect. Equity regards substance rather than form. *Young v. Higbee Co.*, 324 U.S. 204, 89 L. Ed. 890, 65 S. Ct. 594 (1945). The trial court properly looked to the actual effect of the omission rather than the formal declaration.

The other primary issue urged by the purchasers is that the court's forfeiture of the contract of sale of stock was inappropriate because the notice of forfeiture failed to comply with the terms of the contract.

On March 30, 1971, the sellers, after having previously accepted late payments on the first mortgage due the Bank of California, notified the purchasers they would be held to strict performance of their contract. The notice demanded, among other things, that "all other provisions of the contract . . . be carried out timely. If these things are not done immediately, legal action will be taken."

The March 10 payment of $4,750 on the first mortgage was then in arrears. That payment was made on April 6, 1971. The first mortgage payment due April 10, 1971, was not made and a declaration of forfeiture was sent and delivered to the purchasers on April 14, 1971. That declaration quoted the forfeiture provisions of the contract, including a paragraph which read:

> Notwithstanding anything to the contrary herein above, in the event the Buyers miss any payment when due on the existing first mortgage on the Arden Nursing Home, Sellers shall have the immediate right to invoke all of the forfeiture provisions hereon on ten (10) days written notice.

The declaration demanded that purchasers "perform [their] covenants and agreements" and notified the purchasers as well that the April payment and note to the sellers of $4,544.82 was in default. On April 29, 1971, the complaint in this action was filed which alleged, in addition to the failure to make mortgage payments, that "[m]ore than ten (10) days have elapsed since said Declaration of Forfeiture and the Defendants have wholly failed to avail themselves

of the grace period contained in said Declaration of Forfeiture."

Tender of the amounts in default to the Bank of California was made on May 5 and May 6, which would have brought the mortgage current. These tenders were refused by the bank on instruction of the sellers. A receiver was requested by the sellers. He was appointed and took possession of the Arden Nursing Home on May 11, 1971. On May 14, 1971, a notice of additional defaults was given to the purchasers, listing numerous delinquencies in reference to obligations, other than the first mortgage payment, contained in the agreement between the parties.

The trial court failed to find whether or not the notice of forfeiture received by the purchasers on April 14 was proper, but held, instead, that the notice of additional defaults were all sustained by the evidence and amended the pleadings to include the defaults.

Purchasers admit they were in default at the time of service of the declaration of forfeiture on April 14, but argue that forfeiture is too harsh a remedy in the circumstances. They also urge that if the trial court relied on the notice of additional defaults, that notice failed to comply with the forfeiture provisions of the contract by failing to provide for a 30-day period of reinstatement to give the purchasers the time to cure the alleged breaches. In addition, the contract provided that the delinquent payments of the purchasers on their note, as distinguished from the first mortgage, were subject to a 120-day grace period which had not elapsed.

The question of whether forfeiture is too harsh a remedy, under the circumstances of this case, is essentially a question of fact which the trial court resolved against the purchasers. Although forfeitures are not favored, we have frequently deferred to the trial court's judgment in tailoring a decree which balances both parties' interests and reaches an equitable and reasonable solution of the contro-

versy. *Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969).

In this case, the court apparently believed the sellers' theory that the purchasers had depleted the assets of the corporation, contrary to the agreement between the parties, and that any continued possession of the nursing home on their part without restoration of these sums would endanger the economic integrity of the home. The findings regarding the additional defaults substantiate this. The court specifically rejected the purchasers' contention that the sellers tortiously interfered with their economic relationship with the Bank of California. Under the circumstances of this case the court could have found, as it did, that a default with time for reinstatement of all delinquencies was not too harsh a remedy.

We have emphasized that the right to declare forfeiture is derived from the express agreement of the parties. *Moeller v. Good Hope Farms, Inc.,* 35 Wn.2d 777, 215 P.2d 425 (1950). It would appear that the proper procedure as set forth in the agreement between the parties was followed on the first notice. Strict compliance had not been insisted upon with reference to first mortgage payments prior to March 30, 1971. Notice of strict compliance was then given and upon the purchasers' failure to make the April 10, 1971, payment when due, suit was started on April 29, 1971. These proceedings appear to have been a literal compliance with the agreement between the parties.

We cannot agree, however, that the trial court's action amending the pleadings to accept the notice of additional defaults as the basis for forfeiture in this case was proper. Sellers urge that this procedure was approved in *Hansen, Inc. v. Pacific Int'l Corp., supra.* In that case, a valid notice of forfeiture was sent relating to delinquent installment payments and taxes. The delinquent installments were brought current, but the taxes remained unpaid. Suit was then brought alleging that the "Defendant is delinquent in the payments called for in Exhibit 'A' [*i.e.,* the real estate

contract] and its obligations towards plaintiff under the terms and conditions of said real estate contract are now in default." *Hansen, Inc. v. Pacific Int'l Corp., supra* at 225. After suit was filed the defendant tendered the delinquent taxes. The complaint was then amended to more specifically allege that the defendants had jeopardized the landlord-tenant relationship by breaching the terms of the lease with all the tenants and had committed waste. The court found that the inaction of the defendant regarding the tenants' complaints and waste was a substantial breach of the contractual duty of the defendant and a sufficient ground to justify the trial court's action in conditionally forfeiting the defendant's equity. *Hansen* stands for the proposition that where a valid notice of forfeiture is given and a complaint filed thereon, a complaint may state additional grounds for forfeiture, based upon a breach of the contractual agreement of the parties. It cannot be extended to cover this case where there is no finding that the notice of forfeiture upon which suit was instituted is or is not valid. The subsequent procedure employed to give notice of forfeiture was not provided for in the contract of the parties and was, therefore, of no effect.

We cannot find a manifest abuse of discretion on the part of the trial court in allowing the admission of exhibit No. 15, the notice of additional defaults. There is evidence in the record from which the trial court could have concluded that the purchasers knew of the defaults contained in the exhibit. The trial court's action in passing upon a motion to amend the pleadings will not be disturbed on appeal except for a manifest abuse of discretion. *Sanwick v. Puget Sound Title Ins. Co.*, 70 Wn.2d 438, 423 P.2d 624, 38 A.L.R.3d 315 (1967). We likewise find no abuse of discretion in the trial court's failure to grant a continuance to meet the matters contained in exhibit No. 15.

This case is remanded for the entry of a finding of fact on whether the notice of forfeiture, dated April 12, 1971, was properly given. If the trial court so finds, the judgment of

the trial court is affirmed; if not, the judgment of the trial court is reversed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied January 8, 1974.