[No. 23029–8–I.   Division One.   January 3, 1990.]

WALTER E. ASPELUND, ET AL, *Appellants,* v. LESLIE W. OLERICH, ET AL, *Respondents.*

*Larry R. Schreiter* and *Curran, Kleweno & Johnson,* for appellants.

*Gary F. Faull* and *Faull & Banks,* for respondents.

COLEMAN, C.J.—Appellants brought an action in the trial court seeking rescission of an agreement to purchase D&V Vending from respondents claiming that respondents had violated the anti–fraud provision of The Securities Act of Washington by failing to disclose to appellants that two of D&V's accounts were at serious risk of cancellation. The trial court granted judgment in favor of respondents, holding that (1) The Securities Act of Washington did not apply to the sale of D&V Vending to appellants, (2) that respondents did not intend to deceive appellants and that the respondents did not defraud or misrepresent the status of the corporation and its location to appellants, and (3) that the purchase agreement between appellants and respondents was to remain in full force and effect. We reverse.

On January 11, 1985, Walter and Marcia Aspelund purchased D&V Vending Service, Inc., a Washington corporation, from Leslie W. and Leslie E. Olerich for $180,000.[1] D&V owned and maintained vending machines at various

---

[1]Mr. Aspelund has been in the vending machine business since 1958.

locations.[2] The Aspelunds paid $50,000 in cash and executed a note for the balance to be paid in monthly installments of $1,477.57 for all of the shares of stock in D&V. Mr. Aspelund began servicing the vending machines immediately after the purchase. Mr. Olerich accompanied Mr. Aspelund for approximately 2 weeks after the sale to help him learn the route. After that period of time, Mr. Olerich had nothing further to do with D&V.

In February 1985, the Washington State Liquor Control Board Distribution Center (warehouse), which comprised approximately 10 percent of the gross revenue of D&V, informed Aspelund that he was to remove his vending machines from the warehouse. In August 1986, Aspelund lost another account, Heath Tecna Corporation, which comprised 50 percent of the gross revenue of D&V.

On January 16, 1987, the Aspelunds filed a complaint against the Olerichs alleging that the Olerichs had violated The Securities Act of Washington, the Consumer Protection Act, and had knowingly made material misrepresentations of existing facts. The Aspelunds alleged that the Olerichs had failed to disclose prior to the sale that D&V's significant accounts were at serious risk of cancellation or that actual notice of cancellation had been given. After a 1–day bench trial, the court held that (1) The Securities Act of Washington and the Consumer Protection Act did not apply, (2) that the Aspelunds had failed to establish any intent to deceive, and (3) that the Olerichs did not defraud or misrepresent the status of the corporation and its location to the Aspelunds. This appeal followed.

The issue raised on appeal is whether The Securities Act of Washington, RCW 21.20, applies to the transaction between the parties.

---

[2]D&V vending machines consisted of 79 machines on location selling food items and cigarettes, change machines, microwaves, and other types of ovens.

The term "security" is defined in RCW 21.20.005(12) as follows:

"Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit–sharing agreement; collateral–trust certificate; preorganization certificate or subscription; transferable share; investment contract; investment of money or other consideration in the risk capital of a venture with the expectation of some valuable benefit to the investor where the investor does not receive the right to exercise practical and actual control over the managerial decisions of the venture; voting–trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; charitable gift annuity; or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing; or any sale of or indenture, bond or contract for the conveyance of land or any interest therein where such land is situated outside of the state of Washington and such sale or its offering is not conducted by a real estate broker licensed by the state of Washington. "Security" does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period.

The anti–fraud provision of The Securities Act of Washington provides that it is

unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

. . . .

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; . . ..

RCW 21.20.010. Rescission is available as a remedy under RCW 21.20.430 which reads in part:

(1) Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010 or 21.20.140 through 21.20-.230, is liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, . . ..

■ RCW 21.20.010 has been interpreted by *Clausing v. DeHart,* 83 Wn.2d 70, 73, 515 P.2d 982 (1973), to apply to "'face–to–face' negotiations outside the security markets between private individuals for the sale of the capital stock of a corporation." *See also Kaas v. Privette,* 12 Wn. App. 142, 150, 529 P.2d 23 (1974). In the instant case, the sale of D&V Vending was accomplished by the transfer from respondents to appellants of all of the outstanding stock of the corporation and involved face–to–face negotiations outside of the security markets between private individuals. Thus, under *Clausing* the sale of D&V Vending was governed by the anti–fraud provision of The Securities Act of Washington.

We do not accept respondents' argument that the 1979 legislative amendment which added the risk capital definition to the definition of "security" overruled the holding in *Clausing* and limited the definition of security to only include an investment of money in a common enterprise from which the investor expects to reap profits as the result of the efforts of the promoter or third party.

■■ The purpose of the 1979 amendment was to establish the risk capital definition of security as a part of the Washington law in light of the Washington Supreme Court's opinion in *Sauve v. K.C., Inc.,* 91 Wn.2d 698, 591 P.2d 1207 (1979), which held that definition not to be the rule in Washington. *See* Senate Journal (46th Legislature) 1979, at 1688. "The legislature is presumed to be familiar with judicial decisions construing existing statutes." *El Coba Co. Dormitories, Inc. v. Franklin Cy. PUD,* 82 Wn.2d 858, 862, 514 P.2d 524 (1973). Thus, had the Legislature intended to overrule the holding in *Clausing,* it would have explicitly done so. We conclude that the amendment in no way affects the holding in *Clausing.*

■ We next decide whether rescission is available as a remedy. Under The Securities Act of Washington, rescission is not available as a remedy unless there has been an untrue statement or an omission of a material fact. RCW 21.20.010(2); RCW 21.20.430. A material fact is "'"a fact to

which a reasonable [person] would attach importance in determining his [or her] choice of action in the transaction in question."'" *Clausing,* at 73 (quoting *Shermer v. Baker,* 2 Wn. App. 845, 855, 472 P.2d 589 (1970)). Scienter is not required in an action for fraud or misrepresentation under The Securities Act of Washington. *Kittilson v. Ford,* 93 Wn.2d 223, 608 P.2d 264 (1980).

Appellants contend that respondents misrepresented the value of D&V by misrepresenting the status of D&V's accounts. Specifically, appellants contend that respondents failed to reveal that the warehouse had canceled its account with D&V prior to the sale of D&V and that respondents failed to reveal that they were on probation at Heath Tecna prior to the sale.

Elmer Updahl, administrative section manager of the warehouse, testified that he had informed respondent during the first part of December 1984 that the warehouse "had found Andy's Vending, and they had agreed to come in, and when the approval finally comes through, that he'll have to move his machines so they can have the slots." Appellant testified that respondent never informed him of this decision, that respondent only told him that the warehouse account was on the critical side, and that he had a personality conflict with Updahl. It was not until February 1985 that appellant learned that the warehouse was changing to Andy's Vending.

Respondent testified that Updahl had been telling him for 2 years that if the service was not good, he would no longer be servicing the warehouse, and that Updahl repeated this warning during Thanksgiving 1984. Respondent testified that he was never told to get his equipment out of the warehouse. On appeal, respondents contend that they informed appellants that they had a personality conflict with Updahl and that the warehouse account was critical and, therefore, there was no omission or failure to disclose a material fact. We disagree.

The fact that respondents informed appellants of the personality conflict and that the account was critical was

not enough. Even if we accept respondents' version of the facts, there was still a material nondisclosure. At a minimum, respondents had a duty to disclose to appellants that Updahl had been telling them for 2 years and again at Thanksgiving 1984 that if the service was not good, he would replace respondents. These facts were likely to affect the judgment of appellants in their decision on whether or not to complete the sale. *See Kaas,* at 150. The same is true with respect to the Heath Tecna account.

Richard Marcelynas, industrial relations manager for Heath Tecna during 1984–85, testified that in late 1984, due to a rash of complaints, he told respondent that "if it happened one more time, that we would be looking for a new vendor." Appellant testified that respondent never informed him of this conversation. Respondents do not deny these facts. In fact, with respect to this allegation, respondent testified that Marcelynas told him that they were dissatisfied and that Marcelynas was concerned that if respondent's service did not pick up, then Marcelynas would have to remove him.

Respondents had a duty to disclose these facts to the appellants. These are facts to which a reasonable person would attach importance in determining his or her choice of action in the transaction in question. *Clausing,* at 73. Had appellants been informed of these facts they may not have proceeded with the purchase of D&V.

■ Based upon the evidence in the instant case, it is clear that respondents violated The Securities Act of Washington by omitting material facts about D&V's accounts prior to the sale of the company to appellants. These accounts had already formed unfavorable impressions of the quality of respondents' service that were likely to affect appellants' own ability to perform. RCW 21.20 sets forth "a statutory standard of honesty and candor in direct dealings between individuals when the offer, sale or purchase of a security is involved[.]" *Kaas,* at 150. That standard was not met here.

█ Finally, respondents contend that rescission is not appropriate in the instant case because appellants did not seek rescission until approximately 2 years after the date of purchase. This argument is without merit. The Securities Act of Washington contains its own statute of limitation which provides as follows: "No person may sue under this section . . . more than three years after a violation of the provisions of RCW 21.20.010, either was discovered by such person or would have been discovered by him or her in the exercise of reasonable care. . . ." RCW 21.20.430(4)(b).

In the instant case, a cause of action would have accrued in February 1985 when appellants learned of the cancellation of the warehouse account. Appellants commenced this action on January 22, 1987, well within the 3 years provided by the statute.

We need not address respondents' contention that they are entitled to attorney fees because, given the disposition of this case, respondents are not entitled to recover attorney fees.

For the reasons stated herein, we reverse the trial court's judgment that The Securities Act of Washington does not apply and remand for entry of judgment rescinding the purchase agreement pursuant to The Securities Act of Washington.

PEKELIS and FORREST, JJ., concur.