**Curtis K. WADE; Joan Vertlieb; Sharon Svare; Robert Svare; John Starkovick; Johanna Starkovick; Richard Stainslaw; Roger–Olympic Corp., et al., Plaintiffs–Appellants,**

v.

**SKIPPER'S, INC., Defendant–Appellee.**

No. 90–35103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted August 9, 1990.

Decided Sept. 28, 1990.

Paul E. Brain, Tousley, Brain, Seattle, Wash., for plaintiffs-appellants.

Michael A. Small, Sirianni & Youtz, Seattle, Wash., for defendant-appellee.

Before WRIGHT, BEEZER and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

Investors in a limited partnership, formed to own and operate seven Skipper's Seafood N' Chowder House restaurants pursuant to a franchise agreement, appeal from the district court's order granting

summary judgment to Skipper's. The investors argue that the court erred in determining that Skipper's was not a "seller" under the Washington State Securities Act and in refusing to instruct the jury with regard to an implied private right of action under RCW 21.20.010. We affirm.

## I

Skipper's is a publicly-held corporation that owns and operates Skipper's Seafood N' Chowder House restaurants. It also franchises the right to own and operate such restaurants to others.

In February 1983, John Greer and James Dixon initiated discussions with representatives of Skipper's concerning franchise rights to own and operate restaurants. Skipper's provided Greer and Dixon with franchise offering circulars for Hawaii and Oregon. Meetings and discussions continued, and as a result, on June 16, 1983, Greer and Dixon entered into an Area Development Agreement with Skipper's. Under the agreement, Greer and Dixon acquired the exclusive rights to construct and operate seven Skipper's restaurants in Oahu, Hawaii, over a five-year period. The agreement provided that Greer and Dixon, as franchisees, were solely responsible for selecting restaurant sites. Skipper's, in turn, had the right to approve or reject each site after an evaluation that included revenue estimates generated by Skipper's based on site-specific factors (e.g., proximity to major roads, number of restaurants nearby, etc.). Skipper's specifically advised Greer and Dixon that its revenue estimates were confidential and would not be disclosed.

In July 1983, Greer and Dixon prepared their own initial revenue projections, assuming that each of the two proposed restaurants would generate gross sales of $700,000 or more in the first year. After visiting the first proposed site at Kaneohe to collect data necessary for a qualitative site selection analysis, Skipper's field representative, Roger Wilkowski, expressed concern to Greer and Dixon about the level of sales they were projecting.

The parties dispute what Wilkowski represented to Greer and Dixon about the reliability of Skipper's Site Evaluation Data ("SED"). The appellants contend that Greer and Dixon were led to believe that a restaurant site would not be approved by Skipper's unless the SED indicated it would be profitable. Skipper's denies that any such representation was made.

In any event, Wilkowski refused to disclose any information about Skipper's revenue estimates or its SED analysis. He explained that it was Skipper's policy not to disclose such information, so as to avoid liability for misrepresentation. Skipper's undisclosed calculation for the site estimated $547,058 in annual revenue. The appellants contend that this estimate indicated that the operation was marginal at best and was likely to lose money.

In September 1983, Greer and Dixon retained Laventhol & Howath ("Laventhol") to prepare financial projections based on their July 1983 assumptions. On September 21, 1983, Wilkowski wrote to Dixon and Greer, stating that the proposed lease for the first site had not yet been approved, pending resolution of certain cost calculations. He also urged them to consider projections of annual sales of $600,000 or less. Consequently, Greer and Dixon had Laventhol prepare projections based on these lower assumptions. These projections indicated they would lose money if annual sales were under $600,000.

In December 1983, Wilkowski conducted an SED calculation on a second site at Pearl City, but again declined to disclose the results to Greer or Dixon. Skipper's eventually approved the form of the lease for this site without approving the economics of the proposal.

In December 1983 and January 1984, Laventhol completed its financial projections to be included in offering documents for a limited partnership, Oahu Restaurant Ventures ("ORV"), which would finance the franchise operation. The corporate general partner of ORV was FC & F of Hawaii, Inc. which was wholly owned and controlled by Greer and Dixon. Laventhol used the higher revenue assumptions pro-

vided by Greer and Dixon and subjected them to its standard test.

In late December 1983, at Laventhol's request, Skipper's provided financial information on high-volume Skipper's restaurants. Skipper's Anchorage franchise also provided its sales figures, but Skipper's did not participate in this communication. Additionally, at Laventhol's request, Skipper's described specific site criteria used in the SED analysis, but declined to give its values for the criteria. On January 3, 1984, a Laventhol representative spoke with Skipper's director of franchise operations, Sam Peterson, who indicated that he was comfortable with a $700,000 annual sales projection.

On January 27, 1984, the attorneys for Greer and Dixon, Foster, Pepper & Riviera, provided Skipper's with a draft of an Offering Memorandum for the limited partnership, but did not give Skipper's the Business Plan containing Laventhol's financial projections. On February 2, 1984, before Skipper's had responded, the Offering Memorandum was sent to the printer. However, Greer and Dixon eventually agreed to include a disclaimer in the Business Plan and, if feasible, in the Offering Memorandum. Consequently, the first page of the Business Plan states: "This investment does not constitute in any form an investment in Skipper's, Inc. You are reviewing the business plan for a Corporation established to own and operate a seven store *franchise* of Skipper's Restaurants." (Emphasis in original.) The Offering Memorandum further provides: "The Partnership has no control over operations of Skipper's, Inc. and has no affiliation or contractual relation with Skipper's except pursuant to the franchise agreements."

ORV was organized under Washington law in February 1984. The appellants purchased their interests in ORV on or after March 15, 1984. Skipper's did not participate in the partnership sales transactions. The broker for the sales, Meisenbach Investment Equity Corporation, mailed Skipper's a copy of the Business Plan containing Laventhol's projections after the date of the offering, on April 19, 1984. The appellants contend, however, that Skipper's had a copy of certain early projections made on or before September 21, 1983. Ultimately, the venture collapsed in 1986 after losing nearly $2,000,000.

Three years after the offering, appellants filed suit against Skipper's in the United States District Court for the Western District of Washington, asserting claims based on (1) the sale of unregistered securities in violation of § 12(1) of the Securities Act of 1933; (2) misrepresentations and omissions in the prospectus and oral communications in violation of § 12(2) of the Securities Act of 1933; (3) securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934; (4) "controlling person" liability under §§ 10(b) and 12 of the federal securities laws; (5) "aiding and abetting" liability under § 10(b) of the federal securities laws; (6) violation of RICO through acts of securities fraud; (7) violations of the Washington State Securities Act ("WSSA") in selling unregistered securities and in committing securities fraud; (8) violation of the Washington State Franchise Act, and (9) violation of the Hawaii State Franchise Act.

After an initial round of discovery, the parties agreed to file a joint statement of stipulated facts and to present certain issues to the district court for resolution on cross-motions for summary judgment. After extensive briefing and argument on the summary judgment cross-motions, the court granted summary judgment in favor of Skipper's on the seller liability claims under §§ 12(1) and 12(2) of the Securities Act of 1933 and on the similar claims asserted under the corresponding provision of the Washington Securities Act, RCW 21.-20.430(1). With respect to the federal claims, the court determined that Skipper's was not a "seller" within the narrow definition formulated in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). The court similarly rejected the state claims because it determined that the record did not indicate that Skipper's had substantially participated in the sale of limited partnership interests in ORV.

The court also determined that Skipper's could not be liable as a "controlling person" under either the federal or state securities laws and that it could not be held liable based on the appellant's RICO claim. Additionally, the court held that there was no implied private cause of action under the WSSA.

The court denied Skipper's motion for summary judgment with respect to the appellants' claims under Rule 10b–5 and the Washington Franchise Investment Protection Act, RCW Ch. 19.100, because the stipulated facts, as applied to these claims, left room for inferences that were within the province of the jury to make. Accordingly, after additional discovery, the appellants' Rule 10b(5) and Franchise Act claims proceeded to trial. These claims were tried jointly with counterpart Franchise Act claims asserted against Skipper's by Greer and Dixon. The jury returned verdicts in favor of Skipper's on all claims. Final judgment was entered on November 14, 1989. Appellants filed a timely notice of appeal on December 11, 1989.

## II

We review de novo a grant of summary judgment. *Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

## III

■ The appellants argue that the test for "seller" status under Washington law is distinct from the federal test as it existed prior to the Supreme Court's decision in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), and requires a broader application of the term "seller." They contend that the district court erred in applying the stricter federal test. The appellants also assert that Skipper's conduct was sufficient under either standard to merit "seller" status. This argument fails.

RCW 21.20.430(1) provides: "Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010 or 21.20.140 through 21.20.230, is liable to the person buying the security from him or her...." The Washington Supreme Court has rejected the contention that this language imposes liability only on the literal seller of a security who passes title directly to the plaintiff. *See Haberman v. WPPSS,* 109 Wash.2d 107, 744 P.2d 1032, 1051 (1987). In *Haberman,* the Washington Supreme Court concluded that

the substantial factor-proximate cause definition of seller prevailing in the federal circuits provides the best guidance for our analysis of seller liability under RCW 21.20.430(1). We note that our conclusion is in accord with the views expressed in the official comments to the recently revised Uniform Securities Act of 1985.... [which] state that under this section, 'liability may be imposed on a person in addition to the immediate seller if the person's participation was a substantial contributive factor in the violation.' We believe this approach best promotes the legislative purpose behind the WSSA, while harmonizing our statutory scheme with federal and other state decisions.

*Id.* 744 P.2d at 1051 (citations omitted).

The court then considered the Ninth Circuit's substantial factor-proximate cause analysis, quoting *SEC v. Murphy:*

In assessing proximate cause, courts focus first on whether a defendant's acts were the *actual cause* of the injury, *i.e.,* whether "but for" the defendant's conduct, there would have been no sale. A finding of "but for" causation, alone, does not satisfy proximate cause, however.... Before a person's acts can be considered the proximate cause of a sale, his acts must also be a substantial factor in bringing about the transaction.

*Id.* 744 P.2d at 1051–52 (quoting *SEC v. Murphy,* 626 F.2d 633, 650 (9th Cir.1980)) (citations omitted). The *Haberman* court

found the Ninth Circuit's reasoning persuasive. "In a similar fashion" it held: a defendant is liable as a seller under RCW 21.20.430(1) if his acts were a substantial contributive factor in the sales transaction. Considerations important in determining whether a defendant's conduct is a substantial contributive factor in the sales transaction include: (1) the number of other factors which contribute to the sale and the extent of the effect which they have in producing it; (2) whether the defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the sale, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (3) lapse of time.

*Id.* 744 P.2d at 1052. The *Haberman* court emphasized that its substantial contributive factor analysis "simply expands the strict privity approach to sellers so as to include those parties who have the attributes of a seller and thus who policy dictates should be subject to liability under RCW 21.20.-403(1), but who would escape primary liability for want of privity." *Id.*

Although the Washington Supreme Court followed the federal courts' reasoning in formulating its standard, it specifically refused to follow the United States Supreme Court's subsequent rejection of the substantial factor test in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) (requiring privity for § 12(1) seller liability). *See Hoffer v. State*, 113 Wash.2d 148, 776 P.2d 963, 965 (1989) (en banc). On reconsideration of *Hoffer*, the Washington Supreme Court distinguished *Pinter*, stating that "we find the 'substantial contributive factor' test persuasive in the context of WSSA even if the Supreme Court does not in the federal setting." 776 P.2d at 964–65.

Here the district court held that as to the appellants' state securities claim:

the record does not contain any genuine issue of fact in favor of the allegation that Skipper's substantially participated in the sale. *See Haberman*, 109 Wash.2d at 131–32 [744 P.2d 1032]. Con-

sequently, the plaintiff's claim of seller liability under the Washington State Securities Act, RCW 21.20.430(1), is dismissed.

Contrary to the appellants' argument, the district court made no reference to the federal test, but rather relied solely on *Haberman*. Moreover, the cases do not distinguish between the two tests. In fact, in *Hoffer*, the Washington Supreme Court stated that it had "rejected [the] 'strict privity' interpretation in *Haberman....* [and that] [i]n its place [it had] *adopted the 'substantial factor-proximate cause' analysis formulated by the federal courts....*" *Hoffer v. State*, 110 Wash.2d 415, 755 P.2d 781, 789 (1988), on recons. (in part) (en banc) (citations omitted) (emphasis added).

■ The appellants also assert that the district court erred in holding that seller liability requires direct, personal contact between the alleged "seller" and the plaintiff buyer. However, the district court's only reference to the lack of direct, personal contact appears in its discussion of seller liability under section 12(1) of the federal act, which is controlled by *Pinter*. The court correctly held that the substantial factor test was not applicable to that provision.

■ Finally, despite appellants' arguments to the contrary, the district court was correct in concluding that Skipper's conduct as described in the record was insufficient to merit the imposition of seller liability under Washington law. As in *Hines v. Data Line Systems:*

[i]n connection with the actual offering process, there is no evidence to indicate [Skipper's] had any personal contact with any of the investors or was in any way involved in the solicitation process. Instead, the actions of [Greer and Dixon] had the predominant effect of bringing about the sale. [They] conducted the sales transactions beginning with distributing the placement memorandum to securing sales closings with interested in-

vestors.... [Skipper's conduct] was not a catalyst in the sales transaction....

114 Wash.2d 127, 149, 787 P.2d 8, 20 (1990).

Skipper's did not prepare the offering materials. In fact, although the attorneys for Greer and Dixon provided a draft of the Offering Memorandum to Skipper's, they did not wait for Skipper's response before sending it to the printer. Skipper's only contribution to the materials was the disclaimer it eventually persuaded Greer and Dixon to include. Skipper's conduct in giving Laventhol financial information for other Skipper's restaurants (the accuracy of which is not disputed), discussing estimated projections with a Laventhol representative, and receiving copies of the Offering Memorandum is insufficient to constitute a "substantial contributive factor" in the sale of the limited partnership interests.

## IV

■ Appellants also argue that the district court erred in refusing to instruct the jury with respect to an implied private right of action under RCW 21.20.010. They contend that "[t]he district court's ruling contradicts both the case law and the legislative history pertaining to the WSSA." This argument also fails.

Under RCW 21.20.010:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

This section, enacted in 1959, "closely resembles its federal counterpart, Rule 10b–5," although Washington law does not require scienter. *Burgess v. Premier Corp.,* 727 F.2d 826, 833 (9th Cir.1984). The Washington Supreme Court has not yet addressed the issue of whether an implied private right of action exists under section .010;[1] however, the Court of Appeals for the State of Washington has considered the issue on two occasions. *See Shermer v. Baker,* 2 Wash.App. 845, 472 P.2d 589 (1970); *Ludwig v. Mutual Real Estate Investors,* 18 Wash.App. 33, 567 P.2d 658 (1977).

In *Shermer,* the Court of Appeals held that an implied right of action did exist with respect to an action brought against a purchaser of securities. 472 P.2d at 592. At that time, RCW 21.20.430, the "CIVIL LIABILITIES" subdivision of the WSSA, only provided an express right of action against a *seller* of securities. However, the court noted the similarities between section .010 and Rule 10b–5, as well as the admonition of the legislature expressed in RCW 21.20.900:

This chapter shall be so construed as to effectuate its purpose to make uniform the laws of those states which enact it and *to coordinate the interpretation and administration of the chapter with the related federal regulation.*

(Emphasis added). The court stated that "It seems inconceivable to us that the legislature, in 1959, could have intended that RCW 21.20.010 created for intrastate commerce something different from what Rule 10b–5 created for interstate commerce." *Id.* Consequently, the court held that when "a *purchaser* of securities ... violates the provisions of RCW 21.20.010, 'any

---

1. Although *Clausing v. DeHart,* 83 Wash.2d 70, 73, 515 P.2d 982, 984 (1973), has been cited—without analysis—as an endorsement of an implied right under RCW 21.20.010, *see, e.g., Burgess v. Premier Corp.,* 727 F.2d 826, 840 (9th Cir.1984); *Hilton v. Mumaw,* 522 F.2d 588, 600 (9th Cir.1975), "there are a number of good reasons to believe that *Clausing* is not an endorsement of the implied right." *Naye v. Boyd,*

1986–87 Blue Sky Law Rptr. (CCH) ¶ 72,393 at 71,779. For instance, the *Clausing* court never mentioned an implied right. Additionally, the plaintiffs, allegedly defrauded purchasers, already had an express right of action under RCW 21.20.430(1). Finally, the purchasers explicitly sought relief under § .430(1). *Id.* (citing *Clausing,* 83 Wash.2d 70, 515 P.2d 982 (1973)).

person' injured as a result of such violation has an action for damages in the courts of the state of Washington." *Id.* 472 P.2d at 592–93 (emphasis added).

Seven years later, the court of appeals, including two of the same judges who decided *Shermer*, had the opportunity to reconsider the issue. In *Ludwig*, the court initially held that the "fraud or misrepresentation" language of RCW 21.20.430(1) referred to common law fraud, and, therefore, required scienter. The court then considered "whether a private cause of action can be implied from RCW 21.20.010 without the need to resort to the civil liabilities provisions of RCW 21.20.430." 567 P.2d at 662. The court noted that

> Our *Shermer* decision, ... was a response to the legislature's failure to provide a statutory damage remedy against a *purchaser* of securities while providing such a cause of action against a *seller* of securities. With [the 1975 amendment], this erstwhile statutory omission has since been remedied, and accordingly we think it is appropriate to examine the reasoning behind *Shermer*.

*Id.* 472 P.2d at 662–63 (citations omitted). The court observed that *Shermer* relied on RCW 21.20.900 and federal cases implying a civil damage remedy under Rule 10b–5. However, the court stated:

> [w]hile RCW 21.20.900 does seek to coordinate our interpretation with that of the federal courts, it also requires construction so as 'to make uniform the law of those states which enact it.' Previously we adverted to the fact that the Washington Securities Act is substantially adopted from the Uniform Securities Act and at this juncture we note that RCW 21.20.010 is identical to § 101 of the uniform act. That the uniform act did not contemplate an implied cause of action such as that which has been found in Rule 10b–5 is clearly indicated by the official comments to § 101....

*Id.* at 663.

The court then looked to the 1975 amendment to RCW 21.20.430 and relied on the legislature's failure to include RCW 21.20.-010 as one of the sections whose violation would give rise to a damages claim.

> [I]t would have been a simple matter for the legislature to have included RCW 21.20.010 had that been their intent. Consideration of all the circumstances influencing their decision leads us to conclude that the omission was deliberate.

*Id.* (citations omitted). Therefore, the court held that there was no implied private right of action under RCW 21.20.010.

However, apparently unknown to the *Ludwig* court, about a month prior to the decision, the Washington legislature had amended the WSSA so that RCW 21.20.-430(1) & (2) provided an express private right of action for a violation of RCW 21.20.010 by either a purchaser or a seller of securities. This amendment also eliminated the phrase "fraud or misrepresentation" from RCW 21.20.430(1) & (2). *See Naye v. Boyd*, 1986–87 Blue Sky Law Rptr. (CCH) ¶¶ 72,393, 71,780 (1986).

Further, the Washington Supreme Court overruled *Ludwig*'s holding that the words "fraud" and "misrepresentation" as used in the earlier version of RCW 21.20.430(1) & (2) retain their common law meaning and require scienter. *See Kittilson v. Ford*, 93 Wash.2d 223, 608 P.2d 264, 265 (1980). Significantly, the *Kittilson* court held that

> [t]he coordination of the [interpretation of the WSSA] with federal regulations does not require imitation by this court in construing our act, only that our construction not interfere with the federal scheme. No contention is made either in *Ludwig* or by defendant that not requiring scienter would interfere with the federal scheme.

> RCW 21.20.900 contains the further requirement that the act should be construed so as to make state laws uniform. The only other case discussing an unlawful transaction provision is *Treider v. Doherty & Co.*, 86 N.M. 735, 527 P.2d 498 (1974). The New Mexico provision is in all pertinent particulars identical to RCW 21.20.010. In *Treider*, the New Mexico Court of Appeals construed the statute and [held that intent was irrelevant].... The interpretation of RCW

21.20.010 first announced in *Shermer* is the better rule. The legislature has not seen fit to disturb it and neither do we.

*Id.* 608 P.2d at 265–66 (citations omitted).

Although *Kittilson* only overruled *Ludwig* with respect to the issue of scienter, at least two federal courts have held that *Ludwig* no longer reflects the law in the state of Washington. *See WPPSS Securities Litigation,* 1986 Blue Sky Law Rptr. ¶ 72,371 (W.D.Wash., MDL 1986); *In re Melridge, Inc. Securities Litigation,* No. 88–1226–JU, 1989 WL 155691, 1989 U.S. Dist. LEXIS 15363 (D.Oregon, filed Dec. 14, 1989); *Contra: Naye v. Boyd,* 1986–87 Blue Sky Law Rptr. (CCH) ¶¶ 72,393, 71,-720 (1986). *Melridge,* however, provides very little analysis [2] and that of *WPPSS* is seriously flawed. For instance, there is absolutely no reason to read *Kittilson* as broadly as the *WPPSS* court suggests.[3] Additionally, the *WPPSS* court relied on our holding in *Burgess v. Premier Corp.,* 727 F.2d 826, 840 (9th Cir.1984), as support for the existence of an implied private right of action: "the *Burgess* Court clearly intends to say that RCW 21.20.430(1) adds an express remedy to that which had previously been implied under RCW 21.20.010." 1986–87 Blue Sky Law Rptr. at 71,676. However, in *Burgess* we merely stated that purchasers had an implied right of action under RCW 21.20.010 prior to the 1977 amendments, but, thereafter, had an express right of action. The language used in *Burgess,* including our statement that the amendment "changed the remedy available for a violation of RCW 21.20.010," 727 F.2d at 840, suggests that the express right of action did not merely supplement the implied right of action, but actually replaced it. *See Naye* at 71,781.

Further, the *WPPSS* court inaccurately stated that

the Washington Legislature may be presumed to have known about the private right of action [under rule 10b–5] when the Legislature provided that the WSSA is to be construed *in uniformity with* the securities laws of other states and '*related federal regulation.*' RCW 21.-20.900.

*WPPSS* at 71,675 (emphasis added). As described above, RCW 21.20.900 actually provides that the WSSA "shall be so construed as to effectuate its purpose to make uniform the laws of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation." The Washington Supreme Court has emphasized the requirement that the act "be construed so as to make state laws uniform." *See Kittilson,* 608 P.2d at 265–66. Therefore, in construing the act, Washington courts have looked to other states for guidance. *See, e.g., id.* The Washington Supreme Court has also emphasized that "[t]he *coordination* of the [interpretation of WSSA] with federal regulations *does not require imitation* by this court in construing our act, only that our construction not interfere with the federal scheme." *Id.* (emphasis added).

As the court in *Naye v. Boyd* observed, no other jurisdiction that has adopted the Uniform Securities Act has recognized an implied right of action against issuers and insiders under an antifraud provision similar to RCW 20.21.010.

1986–87 Blue Sky Law Rptr. ¶¶ 72,393, 71,-782 (W.D.Wash.1986). Additionally, as in *Kittilson,* the failure to imitate federal Rule 10b–5 in this instance does not interfere with the federal regulatory scheme.

---

**2.** The *Melridge* court merely noted that the Washington Supreme Court had declined to rule on the issue in *Haberman.*

> If the Washington Supreme Court had wanted to reject the existence of an implied right of action under WSSA, it could have done so. In the absence of an express ruling, or an analysis which compels a different result, this court stands by its earlier analysis and ruling that there is an implied remedy under RCW 21.20.-010.

1989 WL 155691, 1989 U.S.Dist. LEXIS 15363,-—.

**3.** Although *Kittilson* dealt only with the issue of scienter, the *WPPSS* court held that *Kittilson*'s conclusion that "the interpretation of RCW 21.-20.010 first announced in *Shermer* is the better rule" also supports the existence of an implied right of action under § .010. *See WPPSS,* 1986–87 Blue Sky Law Rptr. at ¶¶ 72,371, 71,676 (W.D.Wash., MDL 1986).

In finding an implied right of action, the *Shermer* court filled an obvious and unexplainable gap in the coverage of the express remedies provision. No such gap exists in this case. The "CIVIL LIABILITIES" provisions under RCW 21.20.430 create express rights of action against sellers, purchasers, and other participants in a securities transaction. An implied right of action under RCW 21.20.010 is only helpful to the appellants if its scope is not limited to those already liable under RCW 21.20.430. However, the appellants have cited no state or federal case holding that an implied right of action exists under RCW 21.20.010 against anyone other than a participant in a securities transaction.[4]

Further, the language of the WSSA indicates that the legislature did not intend to impose civil liability beyond the bounds of RCW 21.20.430. In fact, the legislature has provided for criminal liability against "[a]ny person who wilfully violates *any provision* of this chapter...." RCW 21.20.400 (emphasis added). It has also provided for injunctive relief "[w]henever it appears to the director that *any person* has engaged or is about to engage in any act or practice constituting a violation of *any provision* of this chapter...." RCW 21.20.390 (emphasis added). In providing for civil liability, however, it has adopted much more restrictive language, enumerating both the provisions whose violation will give rise to a damages claim and the types of persons who may be found liable. RCW 21.20.430.

In *Ludwig* the court used similar analysis in refusing to create rights of action beyond those expressly created by the legislature. The court noted that unlike certain sections of the act drafted to include violations of *any* provision of the securities act, RCW 21.20.430 is restrictively worded to apply only to certain enumerated offenses. The court concluded that "when enumerating in RCW 21.20.430 those statutory sections whose violation would give rise to a damages claim, it would have been a simple matter for the legislature to have included RCW 21.20.010 had that been their intent." 567 P.2d at 663. Although the legislature amended RCW 21.20.430 to include violations of RCW 21.20.010, its action did not undermine the *Ludwig* court's caution in implying rights of action beyond those created expressly by the legislature. In fact, in its 1975 and 1977 amendments of RCW 21.20.430, the Washington State Legislature has demonstrated its willingness and ability to correct its own omissions. "Consideration of all the circumstances influencing their decision [not to include the right of action that the appellants seek supports the] conclu[sion] that the omission was deliberate." *Id.* Therefore, the judgment of the district court is

AFFIRMED.

---

4. As the *Naye* court observed:
   [t]here is no reported Washington case in which a court has decided that under RCW 21.20.010 there exists an implied right of action against any person *other than a participant in a securities transaction....* [Similarly], [a]ll of the federal decisions cited by class plaintiffs involve claims asserted between participants in a securities transaction. The Ninth Circuit decisions purport only to recognize rights of action that are *identical to express rights now available under RCW 21.20.430.*
   *Id.* at 71,780–81 (emphasis added).
   In fact, the reasoning of the Washington Supreme Court in *Hoffer v. State,* 113 Wash.2d 148, 776 P.2d 963, 964–65 (1989) suggests that no implied right of action exists under RCW 21.20.010, at least with respect to parties who are not already liable under RCW 21.20.430 (i.e., parties who are not participants in a securities transaction). In noting the differences between federal Rule 10b–5 and RCW 21.20.430, the court observed that "adoption of a strict privity test would insulate issuers in a firm commitment underwriting from liability under WSSA...." 776 P.2d at 964–65. This would not be the case if an implied right of action existed under RCW 21.20.010 with respect to such parties.